IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01108-MSK-KMT

JERRY D. BROWN,

    Plaintiff,

v.

CONAGRA FOOD INGREDIENTS COMPANY d/b/a Conagra Foods d/b/a Conagra Mills,

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction **(# 35)**, the Plaintiff's response **(# 64)**, and the Defendant's reply **(# 70)**; and the Defendant's Motion for Summary Judgment **(# 36)**, the Plaintiff's response **(# 65)**, and the Defendant's reply **(# 69)**.

**I. Procedural Context, Jurisdiction and Issues**

Mr. Brown's Amended Complaint **(# 31)** alleges three causes of action: (i) race discrimination, under both Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, based on unspecified "discriminating conditions of employment"; (ii) "retaliatory harassment" under Title VII, in that his supervisor, John Mason, assigned him additional job duties in response to Mr. Brown "express[ing] concerns of safety instruction" and an internal complaint regarding Mr. Mason's treatment of staff members; and (iii) racial harassment in violation of Title VII, in that

1

Mr. Mason engaged in "put downs, offensive actions including intimidation of overloading him with work, ridicule or mockery because of his emphasis on safety, [etc.]"

ConAgra moves to dismiss **(# 35)** any Title VII claims arising from anything other than Mr. Brown's June 9, 2006 suspension and July 17, 2006 termination, on the grounds that Mr. Brown failed to allege any other discriminatory acts in his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In addition, ConAgra argues that Mr. Brown's failure to allege any prohibited retaliation in his EEOC charge prevents him from asserting Title VII retaliation claims here. Mr. Brown's response to this motion is fairly abbreviated. He contends that although other instances of discrimination and retaliation are not recited in his EEOC charge, he submitted documents referencing such incidents to the EEOC investigator, and appears to argue, albeit without any reference to supporting authority, that such submissions are sufficient to exhaust the administrative process with regard to the claims. Further, he argues that under *CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951, 1959-60 (2008), retaliation claims are cognizable under 42 U.S.C. § 1981, and thus, his failure to exhaust his retaliation claims under Title VII would not prevent him from maintaining those same claims under § 1981.

Separately, ConAgra moves for summary judgment **(# 36)**, arguing: (i) with regard to the § 1981 claim of racial discrimination, Mr. Brown cannot show that ConAgra acted with discriminatory intent, insofar as he admittedly engaged in a violation of the lockout/tagout policy and, furthermore, alleges that his termination was part of a campaign by Mr. Mason to remove <u>all</u> existing managers, including many white ones; (ii) with regard to the Title VII claim of racial discrimination, Mr. Brown cannot show that he was treated differently from similarly-situated

2

white employees, for the same reasons listed above; (iii) with regard to the claim of retaliatory harassment, Mr. Brown cannot show that he engaged in protected activity and cannot show that any adverse employment action taken against him occurred because of any such protected activity; (iv) with regard to the racial harassment claim, Mr. Brown cannot show a sufficiently hostile working environment, nor show that any such hostility was based on his race. Further, to the extent that Mr. Brown is able to establish a *prima facie* case of discrimination or retaliation, ConAgra contends that he is unable to show that its proffered non-discriminatory and non-retaliatory reason for his termination – his violation of the lockout/tagout policy – is pretextual.

## II. Facts

In summary, Mr. Brown, an African American man, was employed as Manager of Defendant ConAgra Food Ingredients Co.'s ("ConAgra") Packing, Loading, and Warehouse ("PLW") Department at its Commerce City, Colorado operation. On June 9, 2006, Mr. Brown received a disciplinary three-day suspension from ConAgra's Assistant Plant Manager Aaron Harris, apparently for performance-based problems. He complained about this discipline (as well as concerns that Mr. Mason "uses an aggressive tone/manner when dealing with staff members") to the Human Resources Department. On June 26, 2006, the Human Resources Department determined that although discipline was warranted based on the performance problems, a suspension was excessive discipline, and the suspension was converted to a written warning. (The Human Resources Department's investigation found that "while the environment is stressful and driven by a higher level of expectations," there was "[no] evidence to suggest that any type of illegal harassment [was] occurr[ing].")

Mr. Brown was involved in an incident on or about July 7, 2006, in which Mr. Brown and another employee were riding in a freight elevator that stalled in between floors. According to ConAgra, Mr. Brown contacted his supervisor via cell phone to report the problem and was instructed to stay put until the elevator could be repaired or Mr. Brown and his co-worker could be safely extracted.[1] Despite these instructions, Mr. Brown managed to climb out through a hatch in the top of the elevator,[2] open the elevator doors on the floor above, and exit the elevator shaft.

Following the incident, ConAgra's Safety Review Committee investigated the matter. The Committee determined that Mr. Brown's actions in exiting the elevator was a violation of the company's "lockout/tagout" policy. That policy requires that employees power down and secure any machinery before engaging in activities that could cause injury if the machine were to suddenly and unexpectedly resume operation. ConAgra refers to the lockout/tagout policy as one of its "fatal five" policies that warrant immediate termination if violated. As a result, on July 17, 2006, the Safety Committee directed that Mr. Brown be terminated based on that violation.

Mr. Brown offers a more expansive explanation of the circumstances leading to his termination, and as required in its analysis, the Court views these facts, to the extent relevant, in

---

[1] Mr. Brown's response brief disputes that he instructed to remain in the elevator until help arrived, but he cites to no evidence in the record to support this contention. Mr. Brown's own deposition testimony was that he called to report that he was stuck, he was told "Hold tight. I'll see if I can get somebody out here." *Docket* # 65, Ex. 4 at 70.

[2] There is some factual dispute as to whether Mr. Brown exited through a hatch at the top of the elevator or managed to pry the elevator doors apart to escape. ConAgra acknowledges that the difference is largely immaterial, as either action would constitute a terminable violation.

4

the light most favorable to Mr. Brown. Mr. Brown contends that in 2005, upon becoming ConAgra's new Plant Manager, Mr. Mason embarked on a concerted campaign to replace then-existing department managers, including Mr. Brown. Mr. Brown contends that Mr. Mason first attempted to force him to quit by adding additional job responsibilities beyond the scope of Mr. Brown's position. When those efforts failed to induce him to quit, Mr. Brown contends that Mr. Mason and Mr. Harris imposed unwarranted criticism and discipline upon him and eventually seized upon the elevator incident to unjustifiably terminate him.

Regarding the elevator incident, Mr. Brown contends that the elevator was in poor condition and frequently malfunctioned. Mr. Brown contends that although Mr. Harris had the ability to access the elevator's mechanical room and perform a lockout/tagout procedure on the elevator, Mr. Harris did not do so, and instead, laughed at Mr. Brown's predicament. Mr. Brown denies that he was instructed to stay in the elevator and contends that he attempted to escape only after 40 minutes had passed without assistance. More importantly, Mr. Brown contends that a number of employees have similarly climbed out of the top of a stalled elevator without complying with the lockout/tagout policy, yet were not subjected to discipline.

### III. Analysis

#### A. Motion to Dismiss

An individual assertion a violation of Title VII must first file a charge of discrimination with the EEOC within the timeframe provided by the Act. *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.ct. 2162, 2166 (2007); 42 U.S.C. § 2000e-5(e)(1). The failure to file a charge with regard to a particular practice precludes the individual from challenging that practice in court. *Id* at 2167; 42 U.S.C. § 2000e-5(f)(1).

5

Here, it is undisputed that Mr. Brown's EEOC charge did not specifically identify any instances of alleged race discrimination occurring prior to June 9, 2006, nor did it give any indication that Mr. Brown was intending to assert a claim for retaliation. Mr. Brown contends that the charge itself was prepared by an EEOC investigator and did not include all of the allegations that Mr. Brown had detailed to the EEOC. In support of this contention, Mr. Brown has submitted "the full packet of EEOC discrimination filing." The packet consists of the EEOC charge, a one-page typed narrative consisting of 5 paragraphs, and a 7-page EEOC intake questionnaire that includes a single-page handwritten narrative by Mr. Brown regarding the elevator incident. Mr. Brown contends that these documents identify other acts of race discrimination and that page 3 of the intake questionnaire mentions retaliation.

There are some circumstances in which materials submitted by an employee to the EEOC can be deemed to be a substitute for or supplementation of a formal charge of discrimination. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183-84 (10th Cir. 2007). At a minimum, to be effective, the supplemental material must meet the EEOC's requirements for a charge: that it be in writing, that it be signed and verified, and that it sufficiently identifies the parties and the actions or practices complained of. *Id.* at 1184. The employee must show that he intended the material to serve as a charge of discrimination and show that the EEOC treated the submission as a charge. *Id.* at 1185, *but see Federal Exp. Corp. v. Holowecki*, 128 S.Ct. 1147, 1158 (2008) (finding that employee's intent is not determinative).

Mr. Brown's argument on this point fails for several reasons. From a procedural perspective, the supplemental material he relies upon is not signed and verified, and thus, cannot constitute a charge under *Jones*. Nor has Mr. Brown shown that the EEOC considered the

6

supplemental material as amplifying or elaborating upon the formal charge it considered. More importantly, none of the supplemental material sufficiently recites instances of additional race discrimination or retaliation. The one-page typewritten narrative recites Mr. Brown's belief that he was assigned tasks beyond his ordinary job responsibilities; describes an incident on June 9, 2006 in which Mr. Brown was issued a written warning[3] (which is apparently the incident in which he was initially suspended for performance-based reasons); mentions that he was terminated on July 17, 2006, and, apropos of nothing in particular, indicates that the fact that his termination occurred before his suspension could be revoked "is a sure sign of retaliation"; recites Mr. Brown's belief that he has performed his job well; and finally, asserts that "I believe I was discriminated against and harassed." The single reference to "retaliation," unconnected to any allegation of the particular prior opposition to discrimination that prompted it, is insufficiently specific to constitute a supplementation of the charge to include an allegation of unlawful retaliation.[4] Moreover, the Court has located nothing in the supplemental material that indicates that Mr. Brown suffered some adverse employment action prior to the suspension occurring on or about June 9, 2006, the date the charge lists as the first instance of discrimination.

---

[3]The grammar of this portion of the memo makes it difficult to ascertain precisely what is being described. The paragraph, in its entirety, reads "On June 9th I was issued a written warning during the course of this conversation two other charges out of four that was supposed to be removed from the suspension letter. I called human resource and through Alison Deaver Investigation the three day suspension letter was supposed to be reduced to a written warning."

[4]Interestingly, the intake questionnaire also inquires as to the basis fo the charge. Mr. Brown checked the box marked "race," but did not check the box for retaliation.

Accordingly, ConAgra's Motion to Dismiss is granted, insofar as any retaliation claim asserted under Title VII, and any claim of race discrimination involving events other than the June 9, 2006 suspension and Mr. Brown's July 17, 2006 termination are dismissed as unexhausted. As Mr. Brown argues and ConAgra concedes, the failure to exhaust does not affect Mr. Brown's § 1981 claims.

**B. Summary judgment motion**

1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Where, the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish one or more elements of the challenged claim. The burden then shifts to the non-movant to come forward with sufficient competent evidence to demonstrate a genuine issue of material fact with regard to the challenged element(s). If the non-movant does so, a trial is required; if the non-movant fails to produce sufficient competent evidence to demonstrate a genuine issue of fact, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. Race discrimination claims

The elements of a claim of race discrimination are the same under both Title VII and §1981. *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008); *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1134 (10th Cir. 2004). Courts have described this analysis in different ways in different cases, but ultimately, the test traces back to the familiar *McDonnell-Douglas* burden-shifting formula. *Exum*, 389 F.3d at 1134. Mr. Brown must first establish a *prima facie* case of race discrimination by showing: (i) that he is a member of a protected class; (ii) that he held the minimum qualifications for the position he occupied; (iii) that he suffered an adverse employment action; and (iv) that adverse action occurred in circumstances giving rise to an inference of discrimination. *Id.*; *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173 & n. 5 (10th Cir. 2005). The burden then shifts to ConAgra to articulate a legitimate, non-discriminatory reason for the adverse action, and the ultimate burden of proof rests on Mr. Brown to show that the proffered reason is a pretext for race discrimination. *Id.* Viewed in this framework, ConAgra's motion challenges Mr. Brown's ability to prove the fourth element of the *prima facie* case – that his termination occurred in circumstances giving rise to an

inference of discrimination – and his ability to show that ConAgra's proffered reason for his termination – violation of the lockout/tagout policy – is pretextual.

An employee may show that an adverse employment action occurred in circumstances giving rise to an inference of race discrimination in a variety of ways: by showing discriminatory actions or remarks by the decisionmaker, by showing that similarly-situated white employees were treated more favorably, or by showing a particularly probative pattern of events leading up to the adverse action, among other things. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). In determining whether Mr. Brown can establish this element, the Court focuses on the only adverse employment actions clearly identified in the EEOC charge – the June 9, 2006 suspension and the July 17, 2006 termination.

As to the suspension, Mr. Brown has failed to show that it was imposed under circumstances giving rise to an inference of discrimination. Indeed, Mr. Brown's response to the summary judgment motion mentions this event only in general terms. As best the Court can determine,[5] the June 9, 2006 suspension is referred to only in two consecutive sentences in Mr. Brown's response: "Mr. Brown ultimately complained about warnings and improper suspensions that were being thrown at him and filed an internal complaint regarding same. He was advised

---

[5]Mr. Brown's summary judgment response does not comply with the Court's formatting requirements. MSK Practice Standards (Civil), §V.I.3.2. Rather than breaking the claims into their component elements and separately listing the evidence that establishes each element, Mr. Brown recites all of the facts in a single, consolidated narrative. Moreover, he freely mixes facts supported by citation to the record with unsupported conclusory assertions. The Court considers only those assertions of fact that are supported by Mr. Brown's specific citation to the factual record. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The mere fact that supporting evidence can be found in uncited portions of the record is unavailing. It would be an inefficient use of the Court's limited time and resources and an abrogation of the Court's duty of impartiality to independently comb the record to find evidence in order to support a party's case when the party himself fails to do so. *Id.*

that several of these warnings and suspensions were inappropriate and would be removed from his record, but they were not so removed." *Docket* # 65 at 3-4. This assertion is supported by a citation to a portion of Mr. Brown's own deposition, in which he testifies about a promise by ConAgra to modify the suspension, but the circumstances under which the suspension was issued remain unknown. Because Mr. Brown has not come forward with evidence that would suggest that the June 9, 2006 suspension occurred in circumstances giving rise to an inference that it was prompted by racial discrimination, ConAgra is entitled to summary judgment on any discrimination claim predicated on that suspension.

The Court then turns to Mr. Brown's termination. Although Mr. Brown offers a variety of theories, including that he was overworked by Mr. Mason, that Mr. Mason was attempting to purge all existing managers, and that the elevator was known to be unreliable, most of those arguments are not germane to the question of whether the circumstances of his termination warrant an inference that the termination was based on Mr. Brown's race. The sole argument by Mr. Brown that bears directly on this question is his contention that white employees who engaged in similar conduct were not terminated. Mr. Brown's response points to two significant items of evidence on this point. First, he points to evidence that Mr. Harris was present on top of a moving elevator on one occasion. Second, he offers the affidavit of Steve Larson, a former PLW Manager, who attested to his knowledge of unspecified employees who exited a stalled

elevator in the same manner as Mr. Brown without being disciplined.[6]  The Court will examine each issue in turn.

With regard to Mr. Harris, Mr. Brown cites to his own deposition and to the affidavit of Mr. Mason, submitted in conjunction with ConAgra's motion.  *See Docket* # 65 at 5, 10.  In the cited portion of his own deposition, Mr. Brown testified "Aaron Harris rode the man lift – one of our fatal fives.  I caught this guy on the man lift with his cellphone talking, coming down on the man lift.  Aaron, you can't do that.  You know you can get fired for that.  Who going to fire me?"  *Docket* # 65, Ex. 4 at 148.  Later, Mr. Brown testified "Aaron Harris, when he got his ass on top of the elevator and rode it up, what he fired me for.  Riding down on the man lift talking on his cellphone."  *Id.* at 152.  Mr. Brown also points to Mr. Mason's affidavit, in which Mr. Mason states "The elevator incident where Aaron Harris rode on top of the elevator was not a fatal five fall protection violation because the policy requires employees to strictly adhere to the safety procedure for fall protection where provided."  *Docket* # 36, Ex. 15 at ¶ 14 (emphasis added).  Mr. Mason's reference to a violation of ConAgra's fall protection policies during Mr. Harris' incident is perplexing, as there is no allegation that Mr. Brown was disciplined for violation any fall protection policy.  Notably, Mr. Mason's affidavit makes no reference to the lockout/tagout policy as it may have related to Mr. Harris' incident.

---

[6]Mr. Brown also submits the affidavit of Kurt Atkinson, a former employee of ConAgra.  As relevant herein, Mr. Atkinson's affidavit is no more specific than Mr. Larson's affidavit on the issue of which employees escaped from the elevator, the circumstances under which these incidents occurred, or the punishment imposed as a result.  Thus, the Court does not consider Mr. Atkinson's affidavit separately from Mr. Larson's, and the Court's analysis applies with equal force to both affidavits.

ConAgra makes an abbreviated argument that Mr. Harris was not similarly-situated to Mr. Brown with regard to the elevator incidents. It cites *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1120-21 (10th Cir. 2007), for the proposition that "a difference in treatment between two employees by the same supervisor does not automatically give rise" to an inference of discrimination. ConAgra contends that *Timmerman* requires Mr. Brown "to rule out nondiscriminatory explanations for the differential treatment." However, *Timmerman* examined the issue in the context of whether the employee could ultimately prove that the employer's proffered reasons were pretextual, not in the more relaxed inquiry of the *prima facie* case. 483 F.3d at 1120 ("Ms. Timmerman asserts that U.S. Bank's disparate treatment of her in comparison to other U.S. Bank employees caught reversing fees on coworkers' accounts also establishes pretext"). The *prima facie* case is only intended to weed out cases where the adverse action is explained by common, legitimate grounds, and thus, the burden on the employee at the *prima facie* stage is "not onerous." *English v. Colorado Dept. of Corrections,* 248 F.3d 1002, 1008 (10th Cir. 2001); *McCowan v. All-Star Maintenance*, 273 F.3d 917, 921-22 (10th Cir. 2003). Thus, under these circumstances, the Court finds that Mr. Brown's evidence that Mr. Harris' elevator-riding incident did not result in termination for a lockout/tagout violation warrants an inference that Mr. Brown's termination for similar conduct was the result of racial discrimination, sufficient to satisfy the fourth element of Mr. Brown's *prima facie* case as it relates to his termination.

Although the Court need not separately consider Mr. Larson's affidavit, it does so briefly. Mr. Larson attests that "I was aware of numerous times that employees were caught in the elevator and being unable to get out, and I was aware of several of these people who crawled out

13

the elevator's top hatch and opened the doors while it was caught. These people had no fall protection, nor were they cited or terminated for lock and tag violation." The Court has some doubt as to whether Mr. Larson's general assertions regarding unspecified employees would be sufficient, on its own, to satisfy Mr. Brown's *prima facie* case, but, taken together with the particular evidence regarding Mr. Harris, the Court finds that Mr. Brown has carried his burden of establishing a *prima facie* case of race discrimination.

Accordingly, the Court turns to the question of whether Mr. Brown can show that ConAgra's proffered non-discriminatory reason for his termination – violation of the lockout/tagout policy – was a pretext for race discrimination. Pretext can be shown where there are "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007). Once the employer's proffered reason is shown to be pretextual, the factfinder may infer that prohibited discrimination is the real cause for the adverse action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993). An employee may show the employer's proffered reason to be pretextual in a variety of ways: by showing that the stated reason is false, by showing that the employer acted contrary to a written company policy, or by showing that the employer acted contrary to an unwritten company policy or practice, among others. *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Beyond disputing inconsequential aspects of ConAgra's version of events, Mr. Brown does not dispute the basic facts that he escaped from the elevator without first ensuring that it

was immobilized under the lockout/tagout protocol. Nor does Mr. Brown dispute that, on its face, ConAgra's formal policies treat lockout/tagout violations as part of the "fatal five" warranting immediate termination. Indeed, Mr. Brown's own testimony regarding his observation of Mr. Harris riding atop the elevator confirms Mr. Brown's understanding that "you can't do that. You know you can get fired for that." Rather, Mr. Brown attempts to establish pretext by showing that, notwithstanding the formal policy, ConAgra had a practice of overlooking lockout/tagout violations involving the elevator when white employees were involved, and he points to Mr. Harris, as well as the unspecified employees referred to by Mr. Larson as examples.

When an employee attempts to show pretext by pointing to similarly-situated co-workers receiving more beneficial treatment, it is incumbent upon the employee to show that comparators were similarly-situated in all material respects. *Timmerman*, 483 F.3d at 1120, *citing Kendrick v. Penske Transp. Serv.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Among other things, to show differential treatment sufficient to demonstrate discrimination, Mr. Brown to show that, with regard to Mr. Harris (or the unspecified individuals referred to by Mr. Larson), they were subject to the same policies, overseen by the same supervisors, and that their violations involved conduct of similar seriousness. *Id.* In this case, the Court may infer that Mr. Brown and Mr. Harris were subject to the same ultimate supervision and that the lockout/tagout policy had "fatal five" consequences as to both of them. However, there is a notable difference in the circumstances of each infraction. ConAgra contends, and Mr. Brown does not affirmatively dispute, that in Mr. Harris' case, he climbed atop the elevator at the request of an elevator repair contractor who was working on the machine at the time. Although Mr. Harris was present on the roof of the

elevator, the elevator was under the control of the contractor. This presents a different situation than Mr. Brown's incident, in which the elevator had malfunctioned and was not known to be in anyone's control.[7] In these circumstances, the Court cannot find that Mr. Harris' incident and Mr. Brown's are sufficiently similar that a reasonable factfinder could conclude that ConAgra's justification for Mr. Brown's termination is pretext for race discrimination.

The general nature of Mr. Larson's affidavit presents even more difficulty for the Plaintiff. Because Mr. Larson does not identify the employees he knew to have escaped the elevator or otherwise describe the circumstances of the events, it is impossible for Mr. Brown to show that those employees were subject to the same supervision and same policies as he was, much less show that their infractions were of comparable seriousness and were known to ConAgra. Mr. Larson's statement in his affidavit is nothing more than a conclusion; it provides no means by which the situations of the unidentified white employees can be compared to the circumstances of Mr. Brown's incident.[8] As such, Mr. Larson's affidavit is insufficient to raise a genuine dispute of fact as to whether ConAgra's justification for Mr. Brown's termination is pretextual.

Under these circumstances, the Court finds that Mr. Brown has failed to come forward with evidence that would establish a genuine dispute of material fact with regard to the question

---

[7]The different circumstances would seem to explain why Mr. Harris' incident prompted review of ConAgra's fall protection policies, but apparently no consideration whatsoever of the lockout/tagout policy.

[8]To hold otherwise would create the perverse situation in which an employee benefits by presenting conclusory and ambiguous proof in response to a motion for summary judgment, instead of laying out the precise details which allegedly render situations involving employees of different races to be "similar."

of whether ConAgra's proffered reason for his termination was pretext for race discrimination.[9]

Accordingly, ConAgra is entitled to summary judgment on Mr. Brown's race discrimination claims under Title VII and § 1981.

### 3. Retaliation claims

For the reasons stated above, the Court considers only Mr. Brown's retaliation claims as they arise under § 1981. As the Supreme Court explained in *CBOCS*, retaliation is cognizable under § 1981, making relief available where "an individual . . . suffers retaliation because he has tried to help a different individual [who is] suffering direct racial discrimination secure his §1981 rights." 128 S.Ct. at 1958.

Mr. Brown's perfunctory arguments in support of his retaliation claim do not demonstrate facts falling within that definition here. There is some evidence in the record that Mr. Brown made complaints about how Mr. Mason "used aggressive tone[s of voice] or manners when

---

[9]Even assuming Mr. Brown could show that ConAgra had engaged in dissimilar treatment between himself and Mr. Harris, the Court has some doubt that Mr. Brown could nevertheless show that his race was the true reason for his termination. *St. Mary's Honor Center* explains that the final stage of the analysis requires two separate showings: that the employer's proffered reason is untrue, and that discrimination was the real reason for the adverse action. 509 U.S. at 515-16. The Supreme Court recognizes that, in many cases, proof of the former will allow the factfinder to infer the latter, but not always. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000) ("the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct'"). Here, the weakness in the comparison between Mr. Brown and Mr. Harris' incidents, coupled with the utter absence of <u>any</u> other evidence that ConAgra's actions towards Mr. Brown were motivated by his race, coupled with Mr. Brown's own speculation that his termination was the result of a race-neutral campaign by Mr. Mason to eliminate all former managers, including many white managers, would defeat any inference of discrimination that might result from a finding that Mr. Brown and Mr. Harris' incidents were treated differently.

17

dealing with staff members," but nowhere does Mr. Brown contend that Mr. Mason's hostile treatment of the employees was motivated by their race. *Docket # 65, Ex. 4 at 191*. Complaining of rude, but not necessarily unlawful, treatment is insufficient to constitute protected conduct giving rise to a retaliation claim under § 1981. Put differently, absent a showing that Mr. Brown's complaints on behalf of others sought to prevent unlawful racial discrimination, a claim for retaliation under § 1981 will not lie.

Even assuming that a retaliation claim is available under § 1981 where an individual experiences retaliation after attempting to vindicate his <u>own</u> right to be free of racial discrimination, Mr. Brown still fails to show that he fits within this paradigm. Although the record shows that he complained about the June 9, 2006 suspension, nothing in the record indicates that the basis of that complaint was Mr. Brown's belief that the suspension was the result of racial discrimination, as opposed to simple misapplication of the progressive discipline policy.

Accordingly, ConAgra is entitled to summary judgment on Mr. Brown's claim of retaliation under § 1981.

### 4. <u>Harassment claims</u>

Mr. Brown asserts claims for both racial harassment and harassment based upon having engaged in protected conduct. In doing so, he falls victim to a common misunderstanding of nomenclature. Such claims are only available where the employee has been subjected to a work environment that is "permeated with <u>discriminatory</u> intimidation, ridicule, and insult." *See Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (emphasis added). A claim does not lie simply because one's supervisor engages in "hostile" or rude or abusive

treatment. To be actionable, the hostility must be "based on" the employee's race or prior protected conduct, either implicitly or explicitly. *See O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) ("facially neutral abusive conduct can support . . . a hostile work environment claim when that conduct is viewed in the context of other, overtly [ ] discriminatory conduct").

Here, even if Mr. Brown has shown that Mr. Mason treated him rudely, assigned him overly burdensome duties, and was insensitive to his concerns, Mr. Brown has pointed to no evidence that would indicate that such conduct was motivated by either Mr. Brown's race or his (non-existent) complaints that other employees were being subjected to unlawful discrimination. Although the Court can sympathize with Mr. Brown in that criticism from an uncaring or abusive supervisor is stressful and demoralizing, neither Title VII nor § 1981 provide a remedy for such conduct unless it can be shown to arise from Mr. Brown's race or expressed opposition to unlawful discrimination. Accordingly, ConAgra is entitled to summary judgment on the harassment claims.

## **CONCLUSION**

For the foregoing reasons, ConAgra's Motion to Dismiss for Lack of Subject Matter Jurisdiction **(# 35)** is **GRANTED**. Mr. Brown's claims for retaliation under Title VII and claims for race discrimination based on events prior to June 9, 2006 are **DISMISSED** for lack of subject

matter jurisdiction. ConAgra's Motion for Summary Judgment **(# 36)** is **GRANTED** with respect to all remaining claims, and judgment in favor of ConAgra shall enter contemporaneously with this Order.

Dated this 1st day of December, 2008

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge